UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DOLORES H.,

        Plaintiff,

v.

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

        Defendant.

No. 1:20-cv-19756

OPINION

**APPEARANCES**:

Alan H. Polonsky
POLONSKY & POLONSKY
512 S. White Horse Pike
Audubon, NJ 08106

    *On behalf of Plaintiff.*

Rachel A. Honig
Acting United States Attorney
U.S. DEPARTMENT OF JUSTICE
    OFFICE OF THE U.S. ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

Corey Stephen Fazekas
SOCIAL SECURITY ADMINISTRATION
    OFFICE OF THE REGIONAL CHIEF COUNSEL
300 Spring Garden Street
Sixth Floor
Philadelphia, PA 19123

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on an Appeal by Plaintiff Dolores H.[1] ("Plaintiff") from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Commissioner"). (Compl., ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **AFFIRMS** the Acting Commissioner's decision.

I.  BACKGROUND

The Court recites herein only those facts necessary for its determination of this Appeal.

A. Administrative History

On July 30, 2018, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 6, 2018. (AR 11). The claim was denied initially on January 30, 2019, and upon reconsideration on May 7, 2019. (AR 11). Plaintiff filed a request for a hearing on May 21, 2019. (AR 11). Plaintiff appeared, accompanied by counsel, for a telephone hearing to which she agreed in light of the COVID-19 pandemic on May 7, 2020. (AR 11). After the hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled in a decision dated June 29, 2020. (AR 8). The Appeals Council denied her request for review on December 3, 2020. (AR 1). This Appeal followed. (Compl., ECF No. 1).

B. Plaintiff's Background and Testimony

Plaintiff is a fifty-year-old woman who lives on her own in southern New Jersey. (AR 90–91). She has a high school education and can communicate in English. (AR 33, 91). She is a widow, and her primary income comes from social welfare. (AR 90–91). Prior to the onset of her alleged disability, Plaintiff worked at Walmart for over a decade, as a cashier, in customer service, and in

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by her first name and last initial.

receiving. (AR 92–93). She left that job in 2018 because she "got sick with [her] back and the depression . . . . [She] was out for a little bit and then they—Walmart let [her] go because of it." (AR 98). She later worked as a receptionist at Gloucester Terminals, until her depression, back problems, and feet swelling led her to be placed on medical leave on the advice of her healthcare provider. (AR 99–100). She was eventually laid off. (AR 100). She collected temporary disability from the State for a short time but has since relied solely on welfare. (AR 91, 101).

In her initial disability claim, she complained of "back problems, hearing problems, eye problems with both eyes, depression, heart problems, swelling in both legs, and asthma." (AR 122). She explained at her administrative hearing that she has a "hard time" walking because of swelling in her feet. (AR 101). She feels like her hip is "going to give out," and cannot get up and down stairs. (AR 101). Her hips, knees, and all of her bones hurt constantly. (AR 101–02). She can only sit for about ten minutes at a time and can only stand for five minutes at a time without feeling discomfort. (AR 102–03).

Plaintiff explained that she would have difficulty performing a job in which she could alternate sitting and standing all day while answering phone calls because her anxiety makes talking on the phone stressful. (AR 103). She noted that she attends psychiatric therapy and also sees a rheumatologist and a pain management specialist. (AR 103–04). She takes ten milligrams of oxycodone three times a day, as well as an anti-inflammatory medication, Naproxen. (AR 104).

In response to questioning from her attorney, Plaintiff explained that she graduated from high school at age twenty after being held back twice in elementary school. (AR 105). She struggles with reading comprehension and basic arithmetic. (AR 105–06).

Plaintiff further explained that she rarely leaves the house because she simply does not want to go out. (AR 106). She has friends who will check on her by phone every other day. (AR

3

106). She has three children and one grandchild. (AR 107). Only one lives nearby. (AR 107). Although her two-year-old granddaughter also lives nearby, she cannot watch her alone because she cannot lift her and she runs around and she cannot catch her. (AR 108).

Plaintiff also noted that while she can dress herself, it can take her "a little bit" to do so. (AR 109). She has trouble with her hands and fingers, and wears slip-on shoes so that she does not have to tie them. (AR 109). She struggles with buttons and snaps as well. (AR 109). She often drops things like cups and dishes. (AR 110).

Plaintiff may have been diagnosed with glaucoma, but "the doctor never gave [her] the information to go back to have it looked at again." (AR 110). She struggles to see things from far away, and making out shapes, but she has no difficulty looking at a computer monitor. (AR 110).

Finally, Plaintiff explained that she could not return to a job like the one she had a Gloucester Terminals because of her difficulties sitting and standing, and because she fears her depression would recur. (AR 111).

### C. Vocational Expert Testimony

At Plaintiff's administrative hearing, the ALJ also heard testimony from a vocational expert, Susan Moyes. The expert testified that Plaintiff's past work could be classified as: (i) a Cashier II, DOT 211.462-010, a light SVP-2 job; (ii) a cashier in a courtesy booth, DOT 211.467-010, a light SVP-4 job; (iii) a laborer, stores, DOT 922.687-058, a medium SVP-2 job; and (iv) an order clerk, DOT 949.362-026, a sedentary SVP-4 job. (AR 111–12).

In response to a hypothetical posed by the ALJ which asked her whether an individual of Plaintiff's age, education, and work history with certain work limitations could return to Plaintiff's past work, the expert answered no. (AR 112–13). The expert explained this work was precluded by the hypothetical individual's inability to lift and carry things, as well as the person's social

limitations. (AR 113).

The expert further opined, however, that this individual could work as a Marker, Router, or Mail Clerk as defined by the Dictionary of Occupational Titles if limited to light work, or as a Document Preparer, Microfilm if limited to sedentary work and without lifting more than ten pounds. (AR 113–14). In any of these jobs, an employer's tolerance for time off task would likely only reach ten percent of the time, or in some cases up to fifteen percent. (AR 115–16).

The expert also opined that if communication with a supervisor were limited to brief and superficial contact, no jobs would exist. (AR 116–17). Similarly, the expert indicated that if the individual were limited to only occasional use of his or her hands, the Marker, Router, Mail Clerk, and Document Preparer, Microfilm jobs referenced above would be eliminated. (AR 118). All told, more than 160,000 jobs existed in the national economy that the hypothetical individual could perform. (AR 113–14).

**D. Medical History**

Plaintiff has been examined by numerous medical professionals over the years and during the pendency of her disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

1. Adult Function Report

As a part of her initial disability claim, Plaintiff completed an Adult Function Report in August 2018. (AR 277–84). In that report, Plaintiff claimed that she does nothing but sleep all day because she is too tired. (AR 277–78). She does not care for any others or any pets. (AR 277–78). It "takes forever" for her to complete her daily personal care tasks, which her friends need to remind her to do. (AR 278–79). She prepares her own fast, frozen meals. (AR 279). She is unable to clean up after herself, which takes her all day. (AR 279). She does not often go outside, and

rarely drives a car. (AR 279–80). She only shops when she must. (AR 281). She can manage her own money, although she is "really to [sic] tired," and she cannot keep her "account right" as she once could. (AR 280). She rarely spends time with others except her doctors because she does not want to be around people. (AR 281). She cannot walk very far and cannot pay attention for very long, although she can follow spoken instructions. (AR 282). She does not get along well with authority figures and does not manage stress or changes in her routine well. (AR 283).

2. State Agency Assessment

Plaintiff was assessed by the New Jersey State Agency initially in January 2019 and on reconsideration in May 2019. (AR 121–37, 139–60). As part of that assessment, Plaintiff's condition was considered by a consultative psychiatric examiner. (AR 156–58) On reconsideration, that examiner concluded, among other things, that Plaintiff would be "moderately limited" in responding appropriately to criticism by supervisors. (AR 157).

3. South Jersey Behavioral Health

Plaintiff has received psychiatric counseling from professionals at South Jersey Behavioral Health since as early as November 2018. (AR 798–816). Jo Ann Melody, L.C.S.W., a member of its staff, examined Plaintiff on November 14, 2018. (AR 798). She noted that Plaintiff's depression was worsening, and was affecting her sleep, social life, eating habits, personal hygiene, and motivation. (AR 798). She reported auditory and visual hallucinations. (AR 798). She felt others were always talking about her. (AR 798). She complained about anxiety issues. (AR 798). Medication had not been helping. (AR 798). She appeared sad and unkempt but made good eye contact. (AR 802). She presented a depressed mood. (AR 803). Her memory was defective, but she had intact judgment and good insight. (AR 805). Based on these observations, she was diagnosed with major depressive disorder and unspecified anxiety disorder. (AR 807).

Plaintiff was evaluated again on December 24, 2018. (AR 810–16). She complained that she was feeling depressed and explained that she was very dependent on others for her financial, physical, and mental health. (AR 811). She exhibited delayed speech. (AR 811–12). Her family has a history of alcohol abuse. (AR 811–12). She was casually dressed and groomed, appeared cooperative, but was depressed and sad. (AR 815). She complained that she occasionally could hear her deceased husband's voice and felt that others were always talking about her. (AR 815). Her memory appeared to be decreasing. She was of low-average intelligence and exhibited minimal insight, although her judgment was fair. (AR 815). She possessed relevant and coherent thoughts. (AR 815). She was diagnosed with rule-out major depressive disorder and unspecified intellectual disability disorder. (AR 815). She felt that her anti-depressant medication was not working. (AR 816). She was to continue treatment with ten milligrams of Prozac daily. (AR 816).

    4.  <u>Rosemarie Stag, APN</u>

Plaintiff saw Advanced Practice Nurse Rosemarie Stag at Camden County Primary Care from at least as early as January 2019 through April 2020. (AR 1250–1348). Stag treated Plaintiff for a variety of problems, including anxiety, depression, degenerative disc disease, and chronic pain, among others. (AR 1250–51). Plaintiff reported taking Zoloft and Mobic at the time she began seeing Stag. (AR 1252).

In April 2019, she reported increasing her Zoloft dosage, and stopped taking Seroquel. (AR 1397). At that time her mood, memory, affect and judgment were normal, and she had good insight. (AR 1294–97, 1303).

In July 2019, Plaintiff began taking Adderall, which she reported improved her concentration. (AR 1315, 1318).

In April 2020, Nurse Stag prepared a Mental Medical Source Statement in which she

7

opined that effectively all of Plaintiff's mental abilities, social skills, and adaptation abilities precluded her job performance for fifteen percent or more of an eight-hour workday. (AR 1046–49). The only attributes that did not limit her performance were (i) her ability to maintain concentration for a two-hour period; (ii) her ability to make simple work-related decisions; and (iii) her ability to ask simple questions or request assistance. (AR 1047–49). Stag further opined that Plaintiff could only sit, stand, or walk for four hours in an eight-hour workday. (AR 1050). She could only sit or stand for an hour at a time and could walk less than an hour at a time. (AR 1050). She could occasionally lift 5 to 9 pounds, could frequently lift 1 to 4 pounds, and could continuously lift no weight. (AR 1050). She could occasionally carry 1 to 4 pounds but could not frequently or continuously carry any weight. (AR 1050–51). Both hands could occasionally manipulate things. (AR 1051). Her feet could occasionally do the same. (AR 1051). She could occasionally bend, reach, push, and pull, but could never climb or squat. (AR 1051).

### E. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process for determining disability claims and found that Plaintiff was not disabled on June 29, 2020. *See* 20 C.F.R. § 404.1520(a)(4) (2021). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 6, 2018. (AR 13). Second, the ALJ determined that Plaintiff had several severe impairments, including loss of central visual acuity, lumbar degenerative disc disease, cervical degenerative disc disease, asthma, osteoarthritis of the hip, obesity, generalized anxiety disorder, attention deficit disorder ("ADD"), and major depressive disorder. (AR 14). The ALJ noted that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 17–20).

Relying on all the available relevant evidence, the ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b),[2] with some additional exertional limitations. (AR 20–33). As the ALJ explained—

> [S]he can occasionally climb ramps and stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. Visual acuity is frequent for seeing or handling small object but no limitation for medium to large objects. She should have less than occasional exposure to exposure to [sic] extreme cold, heat, wetness, humidity and pulmonary irritants. Able to understand, remember, and carry out simple, and detailed multistep instructions in a routine, environment with few changes. She can work for 2 hours before needing a break. Can have occasional contact with supervisors and coworkers, and occasional contact with the public that's brief and superficial in nature.

(AR 20–21). Accordingly, relying on the testimony of a vocational expert and considering her RFC, the ALJ found that Plaintiff could no longer perform any of her past relevant work. (AR 33). However, the ALJ further found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 34). Therefore, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act since her alleged onset date. (AR 34).

## II.  LEGAL STANDARD

When reviewing a final decision of an ALJ regarding a claimant's disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence."

---

[2]  Specifically, the regulation provides in relevant part—

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 404.1567(b) (2022).

*Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). That analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.

10

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

### III.  DISCUSSION

In her Appeal, Plaintiff identifies three specific alleged errors within the ALJ's decision regarding her disability benefits claim. The Court will address each of these arguments in turn. For the reasons that follow, the Court affirms the ALJ's decision.

### A. The ALJ's Decision that Plaintiff's Conditions Do Not Meet or Equal the Severity of the Listings of Impairments Is Supported by Substantial Evidence.

Plaintiff argues first that the ALJ's decision with respect to Step Three—that is, whether her conditions meet or equal the severity of any of those in the Listings of Impairments—is not supported by substantial evidence. The Court disagrees.

The ALJ identified five specific Listings as potentially applicable to Plaintiff: § 1.02, § 1.04, § 2.02, § 12.04, and § 12.06. (AR 17–18). Plaintiff concedes that the ALJ properly analyzed

11

§ 2.02 but contends that her consideration of the remaining four—those related to her musculoskeletal impairments, §§ 1.02 and 1.04, and those related to her mental health, §§ 12.04 and 12.06—is wanting. (Pla.'s Br., ECF No. 12 at 16–17). Plaintiff is simply incorrect.

With respect to her musculoskeletal impairments and the associated Listings, Plaintiff claims that the ALJ erred because she did "no more than cite the relevant Listings of Impairments provision[s] and then declares that those requirements are not met." (Pla.'s Br., ECF No. 12 at 16). While Plaintiff may not be happy with the conclusions the ALJ drew, this was precisely her job: she stated the elements for each of the relevant Listings and thoroughly explained which elements Plaintiff failed to demonstrate, either due to the presence of contradictory evidence or the absence of affirmative evidence. (AR 17–20). Plaintiff bore the burden of providing objective medical evidence to support a disability finding. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." (emphasis in original)); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) ("The claimant bears the ultimate burden of establishing steps one through four."). She was unable to do so with respect to §§ 1.02 and 1.04 Listings for the reasons explained by the ALJ.

Plaintiff's arguments with respect to her mental impairments and those associated Listings are no more availing. Plaintiff acknowledges that the ALJ assessed the "Paragraph B" criteria as required for consideration of the §§ 12.04 and 12.06 Listings, and that to meet the requirements of the Listings, an individual must have either two "marked" impairments or one "extreme" impairment under those criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 *et seq*. The ALJ found all of Plaintiff's impairments to be "mild" or "moderate," and thus did not meet the Listings.

Plaintiff first misreads the ALJ's decision, suggesting that the ALJ asserted that "on November 14, 2018, [Plaintiff's] memory was intact." (Pla.'s Br., ECF No. 12 at 18). In fact, the

12

ALJ explained that that day was the only one of a series of evaluations in which Plaintiff's memory was *not* intact. (AR 19). But Plaintiff's primary objection is that the ALJ's "mild" and "moderate" findings conflict with the ultimate conclusion of Nurse Practitioner Rosemary Stag in her Medical Source Statement, which suggests that "in nearly all aspects of functioning on a psychological basis, [Plaintiff] would be precluded from functioning 15% or more of the time." (Pla.'s Br., ECF No. 12 at 20; AR 1046–52). The ALJ explained, however—albeit in her RFC analysis, rather than at Step Three—precisely why she found Nurse Stag's opinion only "partially persuasive":

> Ms. Stag provided few observations in her opinion to support her opinion and her treatment notes suggest little support for any limitations based upon her findings as she evaluated the claimant with few elements from a mental status examination. The remainder of her opinion is not consistent with the medical record as a whole based upon the conclusions in Finding 4. In addition, she carries no specialization in the mental health field.

(AR 32–33). ALJs need not use any magic words or particular format to present their analysis; their opinions should be read "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Moreover, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). The ALJ's decision instead needs only to demonstrate that there is substantial evidence to support their conclusions. *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x. 771, 774 (3d Cir. 2004). At Step Three, the ALJ cited ample objective medical evidence to explain why she found the Plaintiff's mental health conditions did not meet the §§ 12.04 and 12.06 Listings. (AR 18–20, 277–84, 798–816, 1250–1348). To the extent Plaintiff believes those findings conflict with Nurse Stag's opinion, the ALJ explained that too. (AR 32–33). That explanation is sufficient and supported by substantial evidence in the record.

Accordingly, Plaintiff's argument with respect to the sufficiency of the evidence supporting the ALJ's conclusions at Step Three fails.

### B. The ALJ's Decision Regarding Plaintiff's RFC Is Supported by Substantial Evidence.

Plaintiff next argues that the ALJ failed to adequately explain why Plaintiff's RFC would allow her to continue to perform light work with additional exertional limitations. The Court again disagrees. As Plaintiff acknowledges, the ALJ discussed at length the available medical evidence with respect to Plaintiff's physical and mental impairments. (Pla.'s Br., ECF No. 12 at 23; AR 20–33). Plaintiff's objection is that the ALJ failed to provide a "logical bridge between the evidence and the ultimate result." (Pla.'s Br., ECF No. 12 at 23 (quoting *Jenkins v. Astrue*, No. 06-0707, 2007 WL 2362982, at *6 (S.D. Ind. Aug. 14, 2007))). That is simply untrue. The ALJ comprehensively explained her conclusions and provided citations to the medical records that served as the basis for those conclusions, including Plaintiff's prescribed medications. (AR 27–33). She further explained why she assigned less weight to certain evidence in the record, such as the report from Nurse Stag. (AR 32). And based on this evidence, the ALJ found that Plaintiff required significant limitations: she could only perform light work with further exertional limitations. That conclusion is justified by substantial evidence, and Plaintiff's argument fails.[3]

### C. The ALJ's Decision that Plaintiff Could Engage in Alternative Work Is Supported by Substantial Evidence.

Finally, relying on the errors she alleged regarding the ALJ's RFC analysis, Plaintiff argues that the ALJ further erred in concluding that Plaintiff could engage in alternative work. (Pla.'s Br.,

---

[3] Plaintiff also correctly notes that the ALJ found Nurse Stag's opinion persuasive insofar as she suggested that Plaintiff "could never climb a ladder, rope, or scaffold," (Pla.'s Br., ECF No. 12 at 25; AR 20), but her conclusion with respect to Plaintiff's RFC suggests that Plaintiff could "*occasionally* climb ramps and stairs, ladders, ropes and scaffolds." (AR 20 (emphasis added)). While it is not immediately clear to the Court that these two statements are necessarily contradictory, to the extent that it was an error by the ALJ, it is certainly harmless because the jobs identified by the vocational expert and on which the ALJ relied for her conclusion at Step Five required no climbing. *See* DICOT 209.587-034, 1991 WL 671802 (Marker); 209.687-026, 1991 WL 671813 (Mail Clerk); 222.587-038, 1991 WL 1991 WL 672123 (Router).

ECF No. 12 at 29–31). For the reasons already stated, the ALJ's conclusion with respect to Plaintiff's RFC was supported by substantial evidence, and therefore no error infected her conclusion regarding Plaintiff's capacity for alternative work.

Plaintiff further argues, however, that because the ALJ relied on a state agency assessment (AR 139–60) that suggested that Plaintiff "would have at least a moderate problem with responding appropriately to criticism," no jobs existed in the national economy that she could perform, according to the vocational expert testimony. (Pla.'s Br., ECF No. 12 at 30–31). That is not correct. The ALJ concluded that Plaintiff can "have occasional contact with supervisors and coworkers, and occasional contact with the public that's brief and superficial in nature." (AR 20). She accounted for this limitation in the hypothetical posed to the vocational expert at the Plaintiff's hearing. (AR 112–13). Based on the vocational expert's testimony and the relevant medical evidence pertaining to Plaintiff's RFC, the ALJ concluded that alternative work opportunities exist. That conclusion is supported by substantial evidence, and Plaintiff's argument fails.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

                                         */s/ Christine P. O'Hearn*
                                         **CHRISTINE P. O'HEARN**
                                         **United States District Judge**